ORiginal

1    **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

2    Name   BRAXTON,          Michael        G.
          (Last)              (First)        (Initial)

3

4    Prisoner Number   T-26973

     Institutional Address   P.O. Box 2210    Susanville, CA 96127

5                            E-filing

6

7    =================================================================

     UNITED STATES DISTRICT COURT
     NORTHERN DISTRICT OF CALIFORNIA

8        MICHAEL GLENN BRAXTON

     (Enter the full name of plaintiff in this action.)                 )

9                                                                       )

                                                                        )    Case No.

10                                                                      )    (To be provided by the clerk of court)

            KATHY PROSPER (Warden)                                      )

11   _____                                   )    **PETITION FOR A WRIT**
                                                                        )    **OF HABEAS CORPUS**
12   _____                                   )

13   _____                                   )
                                                                        )
14   (Enter the full name of respondent(s) or jailor in this action)   )

15   _____                                   )

16   =============================== Read Comments Carefully Before Filling In

17   When and Where to File

18        You should file in the Northern District if you were convicted and sentenced in one of these

19   counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20   San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21   this district if you are challenging the manner in which your sentence is being executed, such as loss of

22   good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23        If you are challenging your conviction or sentence and you were not convicted and sentenced in

24   one of the above-named fifteen counties, your petition will likely be transferred to the United States

25   District Court for the district in which the state court that convicted and sentenced you is located. If

26   you are challenging the execution of your sentence and you are not in prison in one of these counties,

27   your petition will likely be transferred to the district court for the district that includes the institution

28   where you are confined. Habeas L.R. 2254-3(b).

     PET. FOR WRIT OF HAB. CORPUS       - 1 -

1  Who to Name as Respondent

2      You must name the person in whose actual custody you are. This usually means the Warden or

3  jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced. These are not proper

5  respondents.

6      If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now and the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10  A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11      1. What sentence are you challenging in this petition?

12          (a)   Name and location of court that imposed sentence (for example; Alameda

13                County Superior Court, Oakland):

14  Solano County Superor Court          Faitfield, CA

15                Court                          Location

16          (b)   Case number, if known ___FCR - 178124___

17          (c)   Date and terms of sentence August 2001      -      34 yr.- Life

18          (d)   Are you now in custody serving this term? (Custody means being in jail, on

19                parole or probation, etc.)          Yes __XX__   No _____

20                Where?

21                Name of Institution: California Correctional Center

22                Address: P.O. Box 2210  Susanville, CA 96127

23      2. For what crime were you given this sentence? (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known. If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26      1.  Attempted Murder  (Pen C. § 664, 187(a)

27      2. Intentional  Discaharge of FIrearm (Pen C § 12022.7(a),

28          12022.33 (d) (Causing Great Bodily Injury)

1      3. Did you have any of the following?

2           Arraignment:                               Yes _XX_     No _____

3           Preliminary Hearing:                       Yes _XX_     No _____

4           Motion to Suppress:                        Yes _____    No _XX_

5      4. How did you plead?

6           Guilty _____   Not Guilty _XX_   Nolo Contendere _____

7           Any other plea (specify) _____N/A_____

8      5. If you went to trial, what kind of trial did you have?

9           Jury _XX_     Judge alone _____   Judge alone on a transcript _____

10     6. Did you testify at your trial?                Yes _XX_     No _____

11     7. Did you have an attorney at the following proceedings:

12          (a)   Arraignment                          Yes _XX_     No _____

13          (b)   Preliminary hearing                  Yes _XX_     No _____

14          (c)   Time of plea                         Yes _XX_     No _____

15          (d)   Trial                                Yes _XX_     No _____

16          (e)   Sentencing                           Yes _XX_     No _____

17          (f)   Appeal                               Yes _XX_     No _____

18          (g)   Other post-conviction proceeding     Yes _XX_     No _____

19     8. Did you appeal your conviction?              Yes _XX_     No _____

20          (a)   If you did, to what court(s) did you appeal?

21                Court of Appeal                       Yes _XX_     No _____

22                Year: _2005_      Result: Judgment Affirmed

23                Supreme Court of California           Yes _XX_     No _____

24                Year: _2007_      Result: Pet. for Review Denied

25                Any other court                       Yes _____    No _____

26                Year: _____     Result: _____

27

28          (b)   If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS          - 3 -

1    petition?                                    Yes ____    No XX

2    (c)    Was there an opinion?                 Yes ____    No XX

3    (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4                                                 Yes ____    No XX

5    If you did, give the name of the court and the result:

6    N/A _____

7    _____

8    9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9    this conviction in any court, state or federal?          Yes ____    No XX

10    [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11    challenged the same conviction you are challenging now and if that petition was denied or dismissed

12    with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13    for an order authorizing the district court to consider this petition. You may not file a second or

14    subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15    U.S.C. §§ 2244(b).]

16    (a)    If you sought relief in any proceeding other than an appeal, answer the following

17            questions for each proceeding. Attach extra paper if you need more space.

18            I.    Name of Court: _____

19                  Type of Proceeding: _____

20                  Grounds raised (Be brief but specific):

21                  a._____

22                  b._____

23                  c._____

24                  d._____

25                  Result: _____ Date of Result:_____

26            II.   Name of Court: _____

27                  Type of Proceeding: _____

28                  Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS        - 4 -

1              a._____

2              b._____

3              c._____

4              d._____

5              Result: _____Date of Result:_____

6    III.      Name of Court: _____

7              Type of Proceeding: _____

8              Grounds raised (Be brief but specific):

9              a._____

10             b._____

11             c._____

12             d._____

13             Result: _____Date of Result:_____

14   IV.       Name of Court: _____

15             Type of Proceeding: _____

16             Grounds raised (Be brief but specific):

17             a._____

18             b._____

19             c._____

20             d._____

21             Result: _____Date of Result:_____

22   (b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

23                                              Yes _____    No_XX_

24          Name and location of court: _____

25   B. GROUNDS FOR RELIEF

26       State briefly every reason that you believe you are being confined unlawfully. Give facts to

27   support each claim. For example, what legal right or privilege were you denied? What happened?

28   Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS        - 5 -

1  need more space. Answer the same questions for each claim.

2      [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3  petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5      Claim One:_____ See Attachment A _____

6      _____

7      Supporting Facts:_____

8      _____

9      _____

10     _____

11     Claim Two:_____ See Attachment B _____

12     _____

13     Supporting Facts:_____

14     _____

15     _____

16     _____

17     Claim Three:_____ See   Attachment C _____

18     _____

19     Supporting Facts:_____

20     _____

21     _____

22     _____

23     If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25     All claims and issues presented have been presented

26  to the lower courts  for review and disposition.

27     _____

28     _____

PET. FOR WRIT OF HAB. CORPUS        - 6 -

1   need more space. Answer the same questions for each claim.

2   [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3   petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4   499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5   Claim 4 _____ See  Attachment D _____

6   _____

7   Supporting Facts:_____

8   _____

9   _____

10  _____

11  Claim 5 _____ See  Attachment E _____

12  _____

13  Supporting Facts:_____

14  _____

15  _____

16  _____

17

18

19

20

21

22

23

24

25

26

27

28

ATTAchment A

## I.

## REVIEW SHOULD BE GRANTED BECAUSE THE TRIAL COURT'S IMPOSITION OF THE UPPER TERM FOR ATTEMPTED MURDER VIOLATED THE SIXTH AMENDMENT, UNDER THE SUPREME COURT'S RECENT DECISION IN *CUNNINGHAM v. CALIFORNIA*

On June 14, 2001, a jury convicted appellant of attempted murder, and it found true enhancements for personal discharge of a firearm causing great bodily injury and for personally inflicting great bodily injury. (Pen. Code, §§ 664, 187; 12022.53, subd. (d); 12022.7, subd. (a).)

At sentencing on August 9, 2001, the trial court sentenced appellant to a term of 34 years to life in prison. It arrived at that sentence by selecting the upper term for attempted murder (9 years) and then adding a consecutive term for the firearm enhancement (25 year to life). In choosing the upper term, the court stated:

> "[U]pon my review of the factors in aggravation and the factors in mitigation, the Court notes the probation report on page seven cites Rule 4.421(b)(1) for the proposition that the defendant has engaged in violent conduct which indicates a serious danger to society. That includes the current offense, as well as offenses conducted by the defendant in his past. Under Rule 4.421(b)(2), the defendant's prior convictions are numerous. Those are factors in aggravation."

(8/9/01 RT 21.)

Thus, the trial court relied upon several factors to impose the upper term here: (1) that appellant had "engaged in violent conduct," including both "the current offense" and "past" offenses, (2) that these offenses "indicate[]" a serious danger to society," and (3) that appellant's prior convictions were "numerous."

According to the probation report, appellant appeared to have two prior felony convictions. First, in 1971 (28 years before the commission of the current offense), he had been arrested for assault with intent to commit

murder, to which he had "pled" not guilty by reason of insanity and had been committed to Atascadero State Hospital. Second, in 1982 (17 years before the current offense), appellant had been convicted of felony assault. Appellant had also incurred several misdemeanor convictions: for resisting arrest in 1970 (§ 148), for possession of a loaded firearm in 1977 (§ 12031), for driving under the influence (twice in 1985, once in 1994), and for storing a firearm accessible to children in 1995 (§ 12035).[1]

While appellant was before this Court in the second stage of his initial appeal (and after the case was fully briefed there on an issue unrelated to sentencing), the United States Supreme Court decided *Blakely v. Washington* (2004) 542 U.S. 296, holding that a Washington state sentencing judge could not impose an enlarged prison term based on the judge's own determination that the defendant exhibited "deliberate cruelty" in the offense for which he was being sentenced. About six months later (and after this Court had decided the unrelated issue in appellant's case), the United States Supreme Court decided *United States. v. Booker* (2005) 543 U.S. 220, applying the *Blakely* holding to the federal sentencing guidelines. Very shortly thereafter, however, this Court ruled that the principles announced in *Blakely* and *Booker* did not invalidate the way in which California's Determinate Sentencing Law allowed

---

[1]    Both the body of the probation report and the attached rap sheet state merely that appellant had "pled" not guilty by reason of insanity to the attempted murder charge in 1971. Both also indicate appellant went to Atascadero State Hospital in connection with the charge. The trial court presumably concluded that appellant was actually *found* not guilty by reason of insanity and that this amounted to a conviction. (See § 1016 [entry of insanity plea, without not guilty plea, "admits the commission of the offense charged"]; former § 1026, as amended by Stats. 1963, ch. 2128, p. 4418, § 1 [in effect in 1971] [if defendant pleads not guilty in addition to not guilty by reason of insanity, the not guilty plea is litigated first].)

judges to select the upper term in DSL cases. (*People v. Black* (2005) 35 Cal.4th 1238.

This was the state of affairs throughout the instant appeal. There was binding authority from this Court, holding that the DSL scheme for imposing upper terms in this state was constitutional.

The state of affairs changed completely, however, on January 22, 2007, eight days before the Court of Appeal issued its decision in this case. In *Cunningham v. California* (2007) 127 S.Ct. 856, the United States Supreme Court overruled the *Black* decision. The fundamental principle underlying *Cunningham* was that "[e]xcept for a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id*. at p. 868, internal quotation marks omitted.) And "[c]ontrary to the *Black* court's holding," the High Court ruled, "the middle term specified in California's statutes, not the upper term, [is] the relevant statutory maximum." (*Id*. at p. 871.) Thus, "[b]ecause the DSL authorizes the judge, not the jury, to find the facts permitting an upper term sentence, the system cannot withstand measurement against our Sixth Amendment precedent." (*Id*. at p. 871)

The *Cunningham* decision is fully applicable to the present appeal. (*Griffith v. Kentucky*, *supra*, 479 U.S. 314.)

As the first of the above-quoted sentences from *Cunningham* indicates, there is an exception to the constitutional requirement that aggravating factors have to be submitted to a jury and found true beyond a reasonable doubt. The exception involves "the fact of an earlier conviction." (*Almendarez-Torres v. United States* (1998) 523 U.S. 224, 226; see also *United States v. Booker*, *supra*, 543 U.S. at p. 231 ["the fact of an earlier conviction"]; *Blakely v. Washington*, *supra*, 542 U.S. at p. 301 [same]; *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [same].) This exception is read very narrowly. It applies

only to the mere fact of a prior conviction. (*Shepard v. United States* (2005) 544 U.S. 13, 24.)

However, the factors upon which the sentencing judge relied to impose the upper term on appellant were not "the fact of an earlier conviction." As indicated earlier, the judge based her selection of the upper term on her conclusions that appellant had "engaged in violent conduct" (including both "the current offense" and "past" offenses), that this violent conduct "indicates a serious danger to society," and that appellant's prior convictions were "numerous." (8/9/01 RT 21.) Of course, the fact that appellant engaged in violent conduct in "the current offense" cannot begin to justify the selection of the upper term, because, by definition, violent conduct is inherent in the current conviction.

As for the trial court's conclusion that appellant "had engaged in violent conduct" in his past offenses, this is *not* inherent in those convictions and is beyond "the fact of [the] earlier conviction." For example, for all that could be told from "the fact of the earlier conviction," appellant could have been a mere aider and abettor in those prior cases. Indeed, since both prior convictions preceded the landscape-altering decision in *People v. Beeman* (1984) 35 Cal.3d 547, appellant could have been convicted as an aider and abettor on grounds that would be insufficient to sustain criminal liability at all in the post-*Beeman* era. Thus, the sentencing judge in the present case had to make factual determinations beyond "the fact of the earlier convictions" in order to rely on the purported fact that appellant "had engaged in violent conduct" in his past offenses.

The situation is at least as clear with regard to the remaining factors relied on by the sentencing court. That appellant's current and prior offenses purportedly "indicate[] a serious danger to society" is not part of "the fact of the earlier convictions." Continuing present dangerousness is a factual matter

that is not inherent either in the present case or, particularly given the remoteness in time, in "the fact of the earlier convictions." It was, thus, a matter for jury determination under *Cunningham*.

Similarly, the "numerous" characterization of appellant's prior convictions is a question of fact for the jury. The concept of numerosity goes beyond the mere fact of an earlier conviction, and here, as appellant's counsel pointed out below, appellant had committed no crimes related to violence for nearly two decades before the present offense, and no offenses serious enough to rise to the level of a felony. Thus, whether appellant's prior convictions were "numerous" is a fact that must be determined by a jury. (See *Cunningham*, *supra*, 127 S.Ct. at p. 863 ["the California Supreme Court has repeatedly referred to circumstances in aggravation as facts"], 869, fn. 14. ["*[A]ny* fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"] (emphasis in *Cunningham*, quotation marks omitted).)

Under *Cunningham*, the trial court's selection of the upper term violated the Sixth Amendment. Review should be granted to address the issue.

ATTACHMENT B

## II.

**REVIEW SHOULD BE GRANTED BECAUSE OF THE ADMISSION OF EVIDENCE THAT, TWO WEEKS BEFORE THE CHARGED OFFENSE, APPELLANT HAD TOLD POLICE OFFICERS THAT HE HAD HAD THE NICKNAME OF "HIT MAN" 30 YEARS EARLIER AND THAT HE HAD SHOT AT PEOPLE IN THE PAST**

In the present case, appellant was accused of the attempted murder, on September 14, 1999, of an employee of the trailer park where he had been living for the past several years. Two days earlier (on September 12), appellant had been served with a notice that he was being evicted from the park. The cause of the eviction was the fact that, on August 30, he had fired a weapon into the ground shortly after he had had an run-in with neighbors. Police had been called in connection with the August 30th incident, and in talking with officers, appellant stated that he had had the nickname of "the hit man" when he was a teenager (three decades earlier) and that he had shot at people in the past.

Evidence of these statements was proffered at appellant's trial. The defense objected that the evidence was irrelevant and was inadmissible under Evidence Code section 352. In response, the prosecutor contended the evidence was probative of appellant's "state of mind." (RT 12.) The prosecutor explained that the evidence showed "how [appellant] viewed himself in terms of his relation to those around him" and that "in fact his way of acting out on that opposition was by getting drunk and using a firearm." (RT 12-13.) Thus, according to the prosecutor, the statement showed appellant's "acquaintanceship [with] and his willingness to use firearms." (RT 13.) The trial court overruled appellant's objections and admitted the statement. (RT 14.)

The prosecutor could scarcely have articulated any more clearly the inadmissibility of that evidence. The fact that the prosecutor intended to use

the evidence as proof of appellant's "way of acting out" and his "willingness to use firearms" demonstrates the impropriety of the admission of the evidence, under state law and under the Due Process, Equal Protection, and fair jury trial provisions of the federal Constitution.[2] These rationales were explicit efforts to show appellant's character and propensities and thus to prove that he acted in accordance with those traits on September 14th. On their face, they establish the impropriety of admitting the evidence, and the error is only compounded by the fact that the nickname had existed only in the remotest past — 30 years earlier, when appellant had been a teenager.

The Court of Appeal in this case viewed the evidence as admissible to show appellant's mental state at the time of the charged offense (involving a non-neighbor two weeks later) because appellant's statements "constituted, effectively, a generic threat to do harm." (Slip Opn. at p. 13.) This reasoning is effectively a rewording of the prosecutor's arguments. It actually confirms the validity of appellant's claim.

---

[2]     See, e.g., *McKinney v. Rees* (9th Cir. 1993) 993 F.2d 1378; *Jammal v. Van de Kamp* (9th Cir. 1991) 926 F.2d 918, 920.

ATTACh$_{meN}$ C

## III.

**REVIEW SHOULD BE GRANTED BECAUSE THE INSTRUCTIONS LED THE JURY TO MISUNDERSTAND THAT IT WAS NOT TO "DEAL WITH" NECESSARILY INCLUDED OFFENSES UNLESS IT "UNANIMOUSLY FIND[S] THE DEFENDANT NOT GUILTY OF THE GREATER CRIME." IF THE INSTRUCTIONS WERE NOT MISLEADING, THEN A NEW TRIAL SHOULD HAVE BEEN GRANTED BECAUSE JURORS DELIBERATELY MISREPRESENTED THE INSTRUCTIONS DURING DELIBERATIONS**

It is appellant's contention that either (1) the instructions given the jury regarding the order in which it could deliberate on the charged and necessarily included offense were prejudicially misleading and thus violated state law and the Due Process, Equal Protection, and jury trial provisions of the United States Constitution, or (2) jurors committed misconduct, in violation of federal constitutional rights to Due Process and a fair trial by jury, by deliberately misrepresenting the instructions during deliberations.

The claim of instructional error is based primarily upon the language used in the instructions.

The juror misconduct claim is based on juror declarations, submitted to the trial court at the motion for new trial, depicting statements made during deliberations, admissible under Evidence Code section 1150 because they show an "'express agreement' to violate the court's instructions" or at least "'extensive discussion evidencing an implied agreement to that effect.'" (*Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1683-1684, quoting *Krouse v. Graham* (1977) 19 Cal.3d 59, 81.) The declarations showed (1) that some jurors refused to discuss the necessarily included assault charge throughout the deliberations, insisting that the judge had forbidden the jury to consider the charge until it first unanimously agreed that appellant was

not guilty of attempted murder and (2) that at least three other jurors acquiesced in that refusal even though they understood the jury had not been so forbidden. If, contrary to appellant's claim of instructional error, the instructions did clearly convey the order-of-deliberations principles required by the Constitution and by *People v. Kurtzman* (1988) 46 Cal.3d 322, then the juror declarations were admissible to show, and did show, that some or all jurors committed misconduct.

The Court of Appeal concluded that the instructions were proper. (Slip Opn. at pp. 15-16.) However, the court did not consider all the instructions, including most of the ones on which appellant's contention rested (as appellant pointed out in his petition for rehearing at pages 8-10). It is at least reasonably probable that, as a result of the court's instructions, the jury concluded it was precluded from considering the lesser assault charge unless it had first unanimously agreed that the defendant was not guilty of attempted murder, a misunderstanding that resulted in violations of both state law and the due process, equal protection, and fair trial provisions of the federal Constitution. To understand how the jury came to this conclusion, it is necessary to follow the sequence of instructions.

In instructing the jury just prior to deliberations, the trial court initially explained that the jury had to "determine" whether appellant was "guilty or not guilty of the crime charged or of any lesser crime" and that the jurors had "discretion to choose the order in which you evaluate each crime and consider the evidence pertaining to it." The court then advised the jury — twice — that the court "cannot accept a guilty verdict on any lesser crime unless you have

unanimously found the defendant not guilty of the greater crime."[3] (RT 716; CT 140; see CALJIC No. 17.10 (6th ed. 1996).)

To the average lay person, the distinction the instruction sought to draw between (1) *evaluating* and *considering* crimes and (2) making *findings* about guilt or innocence was not an intuitively obvious proposition. At the very least, although the terse language of the trial court's instruction conformed to CALJIC No. 17.10, it left room for misunderstanding.

And the opportunity for misunderstanding would only expand as the pre-deliberation charge continued. For, shortly after delivering CALJIC No. 17.10, the trial court delivered its own, non-CALJIC instruction to explain the verdict forms. (RT 719-721.) This instruction told the jury that "the first question presented on your verdict form" would be whether appellant was guilty or not guilty of attempted murder as charged in Count One. (RT 719.) It further advised the jurors that "only if you have found the defendant not guilty of attempted murder" would they "answer" the question whether appellant was guilty or not guilty of "the lesser" crime of assault with a firearm. (RT 721.)

---

[3]   In relevant part, the instruction as delivered read, "If you are not satisfied beyond a reasonable doubt that the defendant is guilty of the crime charged, that is attempted murder, you may nevertheless convict him of any lesser crime . . . . Thus, you are to determine whether the defendant is guilty or not guilty of the crime charged or of any lesser crime. In doing so, you have the discretion to choose the order in which you evaluate each crime and consider the evidence pertaining to it. You may find it productive to consider and reach a tentative conclusion on all charges and lesser crimes before reaching any final verdict. However, this Court cannot accept a guilty verdict on any lesser crime unless you have unanimously found the defendant not guilty of the greater crime. [¶] Let me state that one more time. [¶] This Court cannot accept a guilty verdict on a lesser crime unless you have unanimously found the defendant not guilty of the charged greater crime" (RT 715-716.)

Not only did this instruction appear to specify a sequence to addressing the crimes (with attempted murder being "the first question presented" to the jury), but to a layperson, the latter part of the instruction would be understood as contradicting what the jurors had been told in the earlier instruction that tracked CALJIC No. 17.10. For, although the CALJIC No. 17.10-based instruction had authorized the jury to "reach a tentative conclusion on all charges and lesser crimes before reaching any final verdict" (RT 716), the non-CALJIC, verdict-form instruction forbid the jury from giving any "answer" (i.e., from reaching any "conclusion") with respect to the assault-with-a-firearm offense unless it had reached a final determination of not guilty with respect to the attempted murder charge (RT 721).

This was the state of affairs when the jury began its deliberations. And the problems mounted after the jury sent out a note during deliberations, asking: "Were There 2 Counts Against the Defendant? (Attempted Murder and Assault)." (Conf. CT 101; RT 738.) In responding to this question, the trial court misstated the law with respect to the order of jury deliberations and then apparently tried (unsuccessfully) to correct the misstatement.

In its initial response to the jury's question, the trial court expressly tied the jury's consideration of the charges to the sequence of the verdicts. The court told the jury that only attempted murder was charged in the Information and that assault with a firearm was not charged but was "before you for consideration," along with two special allegations. The court then continued:

> "So those are the two special allegations to be considered *if the jury gets to the point of considering assault with a firearm*. And I say '*if the jury gets to that point*' because I instructed you that you can only bring back a verdict on assault with a firearm if you unanimously find the defendant not guilty of the charged crime. Under our law, with respect to the charged crime, if the jury were to find the defendant guilty of the charged crime and to address the enhancements of the charged crime, *there's no need* to go any further *to deal with the crime of assault with a firearm*. You only get to the assault with a firearm

point for a verdict if you have unanimously found him NG of the charged greater crime.

"So, does that clarify what was charged and what was not and the relationship between the two crimes? One is the greater crime of attempted murder with the enhancements. And if there is a finding of guilt as to that and the enhancements are addressed, there's *no need to deal with the lesser crime.*

"*You only deal with the lesser crime if you unanimously find the defendant not guilty of the greater crime. If you do that, then you move on and then you ask -- consider and deliberate as to whether or not it was proved beyond a reasonable doubt that the lesser crime was committed.*"

(RT 739-740 [emphasis added].)

With the judge having explicitly directed that the jury was to "move on and . . . consider and deliberate" on the assault charge *only* after "finding the defendant not guilty of the greater crime," defense counsel asked to approach the bench. Thereafter (the bench conference was unreported), the trial court stated the following:

"Ladies and Gentlemen of the jury, there was a jury instruction that I read to you that said that while you're deliberating you can look at both crimes, you can look at the evidence as to both crimes and you can decide the order in which you're going to evaluate the crimes.

"But in terms of the verdicts that you can bring back to the Court, this Court cannot accept a verdict on the lesser crime until you have unanimously found the defendant not guilty of the greater crime. And, again, if there is a finding of guilt as to the greater crime, there's *no need to go any further to deal with the lesser crime.*

"But in terms of how you choose to look at the crimes before you get to the point of actually rendering a verdict, you can debate and evaluate them in any order that you want. It's just that I can't accept a verdict on the lesser crime *until* there's been a unanimous finding by you that the defendant is not guilty of the greater crime."

(RT 741 [emphases added].)

In these five sentences, the trial court was apparently attempting to correct the immediately preceding charge to the jury, but it is highly unlikely that any juror would have had his or her misunderstanding corrected. For one thing, the court never expressly told the jurors that what it had just told them about the order of deliberations — that they could "consider and deliberate" on the assault charge only after reaching a verdict on attempted murder (RT 740) — was actually wrong. Rather, the court merely tried to paraphrase what it had said much earlier, in a pre-deliberation instruction, without acknowledging that the more recent charge was erroneous.

Even then, the paraphrasing of the pre-deliberation instruction was inconsistent because, in the middle of it, the court reiterated that "if there is a finding of guilt as to the greater crime, there's *no need to go any further to deal with the lesser crime.*" (RT 741 [emphasis added].)

The upshot is that it is at least more likely than not that the jury believed it could not deliberate on the assault offense unless it first unanimously acquitted appellant of the attempted murder charge. And that, of course, constitutes error.

But if there is no reasonable likelihood that the jury was confused or that jurors misconstrued or misapplied the order-of-deliberations instructions, then the evidence in the jury declarations admits of only one conclusion: the jurors must have been agreeing not to follow the judge's instructions. For, if there was no confusion or misunderstanding, then the jurors who insisted that the judge had "instructed us that we were not allowed to consider" the lesser charge "until we had unanimously agreed that Mr. Braxton was not guilty of attempted murder" must have known that the judge had done no such thing. And the three declarants who agreed to go along with these jurors must have known this as well, since they, too, were not confused about the meaning of the instructions. At the very least, an evidentiary hearing is required into the question of misconduct.

ATTAchment b.

## REVIEW SHOULD BE GRANTED BECAUSE OF THE TRIAL COURT'S REFUSAL TO INSTRUCT ON ATTEMPTED VOLUNTARY MANSLAUGHTER

Appellant was charged with attempted murder, i.e., with having attempted to kill "unlawfully and with malice aforethought." (CT 15; see § 187, subd. (a).) Because the charged offense was an attempt, a specific intent to kill was required for a conviction, and thus the jury was correctly instructed only on *express* malice aforethought, and not on *implied* malice. (See RT 711; see § 188.)

Defense counsel requested that the jury also be instructed on the lesser offense of attempted voluntary manslaughter. (RT 602; see § 192, subd. (a).) Counsel agreed that there was no evidence of provocation, but he insisted that the defense was entitled to an instruction on attempted voluntary manslaughter because there was evidence from which the jury could conclude that, although an intent to kill was present, malice had been negated. (RT 606, 607-608.)

The trial court refused the defense's proffered instruction, ruling that in the absence of provocation or imperfect self-defense, there could be no crime of attempted voluntary manslaughter. (RT 602:26-603:6, 606:1-12.) The court did instruct the jury on the general intent crime of assault with a firearm. (RT 715-718.)

The trial court was in error about attempted voluntary manslaughter. An intentional killing *can* be a voluntary manslaughter (and hence an attempted killing can be attempted voluntary manslaughter) even in the absence of provocation or imperfect self-defense. (*People v. Rios* (2000) 23 Cal.4th 450.) As *Rios* made clear, "[p]rovocation and imperfect self-defense

are not additional elements of voluntary manslaughter which must be proved and found beyond a reasonable doubt in order to permit a conviction of that offense." (23 Cal.3d at pp. 469-470; *id.* at p. 468 fn. 13 ["provocation is not an element of voluntary manslaughter"].) Rather, "a conviction of voluntary manslaughter is supported by proof and findings . . . that the homicide was unlawful and intentional." (*Id.* at p. 454.) "[A] conviction of voluntary manslaughter can be sustained under instructions which require, and evidence which shows, that the defendant killed intentionally and unlawfully." (*Id.* at p. 463.) "[I]f the evidence shows an intentional criminal homicide, but malice is not established, the accused is appropriately convicted of *voluntary manslaughter*." (*Id.* at p. 469.) "We hold that a conviction of voluntary manslaughter may be sustained upon proof and findings that the defendant committed an unlawful and intentional homicide." (*Id.* at p. 469.)

Thus, the trial court deprived appellant of his federal constitutional rights to Due Process, Equal Protection, and a fair jury trial when it refused to instruct on attempted voluntary manslaughter.

ATTACH E

## V.

## REVIEW SHOULD BE GRANTED BECAUSE OF THE CUMULATIVE EFFECT OF THE ABOVE ERRORS AND/OR OTHER CONSTITUTIONAL VIOLATIONS IN THE IMPROPER ADMISSION OF ADDITIONAL EVIDENCE AND THE GIVING OF OTHER IMPROPER JURY INSTRUCTIONS

Assuming arguendo that a new trial is not required as the result of any of the preceding claims, a reversal would nevertheless be required because of the cumulation of errors that occurred in this case. Not only does the totality of federal constitutional errors mandate a reversal under *Chapman* and as a matter of Due Process, Equal Protection, and the right to fair jury trial, but the same conclusion must be reached even if the errors are viewed as state law error. State law errors "that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair."[4] In any event, the state law errors, considered together, also compel the conclusion under *Watson* that a different result more likely would have occurred in the absence of the errors. It is established that the combined effect of instructional errors and/or evidentiary errors may create cumulative prejudice. (See, *People v. McGreen* (1980) 107 Cal.App.3d 504, 519-520; *People v. Buffum* (1953) 40 Cal.2d 709, 726; *People v. Ford* (1964) 60 Cal.2d 772, 798.)

The cumulation of errors must take into account the errors the Court of Appeal found, which included four errors in the admission of evidence and the giving of jury instructions. (Slip Opn. 10-12, 13-14, 18-19, 19-20.) These

---

[4]    *Cooper v. Sowders* (6th Cir. 1988) 837 F.2d 284, 286-88; *Lincoln v. Sunn* (9th Cir. 1987) 807 F.2d 805, 814 footnote 6; *Menzies v. Procunier* (5th Cir. 1984) 743 F.2d 281, 288-289; *Greer v. Miller* (1987) 483 U.S. 756, 764; *Rose v. Lundy* (1982) 455 U.S. 509, 531 footnote 8, concurring opinion; *Taylor v. Kentucky* (1978) 436 U.S. 478, 488; *Donnelly v. DeChristoforo* (1974) 416 U.S. 637, 642-43.

consisted of errors in (1) admitting evidence of the details of the August 30th incident in which appellant fired his weapon into the ground, (2) admitting testimony of appellant's estranged wife that he was a "violent drunk" and had "a Dr. Jekyll and Mr. Hyde personality," (3) instructing the jury on appellant's supposed failure to explain or deny evidence against him, and (4) instructing the jury on appellant's purported pre-offense statements of intent, plan, motive, and design. All of these were error under both state law and the Due Process, Equal Protection, and fair jury trial provisions of the United States Constitution.

The Court of Appeal found these errors to be non-prejudicial. (Slip Opn. at pp. 15-16, 20-21.) The Court of Appeal not only failed to use the federal constitutional standard, but it also failed to take account of the trial court's assessment of just one of these errors (a failure that was pointed out to the Court of Appeal in the petition for rehearing).

The Court of Appeal's opinion concluded primarily that the errors were harmless because "the jury rejected" the expert evidence presented by the defense. (Slip Opn. at p. 15, 21.) However, this conclusion begs the question. Obviously, the jury did reject the expert's opinion, but the relevant inquiry is whether it was the inadmissible evidence and improper instructions that *contributed to* the rejection. The Court of Appeal failed to address this question.

This failure was particularly significant because the trial judge made very clear that the answer to the question is affirmative. For the trial judge characterized the evidence of the August 30th incident as "highly relevant" and "important" for the jury. (RT-II at pp. 7:3, 6:11.) Just as the Court of Appeal gave deference to the trial court's determination as to the admissibility of evidence (Slip Opn. at pp. 7, 10), so also was it required to give deference to the trial court's determination as to what admitted evidence was "important" and "highly relevant" to the jury. And if just this one item of inadmissible evidence was "important" and "highly relevant" for the jury, then it is at least reasonably likely that all of the errors cumulatively caused the jury to reject the defense expert's testimony.

1   List, by name and citation only, any cases that you think are close factually to yours so that they

2   are an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning

3   of these cases:

4   _____See Appendix A_____

5   _____

6   _____

7   Do you have an attorney for this petition?                    Yes_____        No _X_

8   If you do, give the name and address of your attorney:

9   ____N/A_____

10  WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11  this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12

13  Executed on _3- 22-08_____                    Michael Glenn Braxton

14          Date                                Signature of Petitioner

15

16

17

18

19

20  (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS        - 7 -

Michael Braxton
Inmate No: T-26973
California Correctional   Center
P.O. Box   2210
Susanville, CA 96127

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

MICHAEL G. BRAXTON,                    )
                                       )
                          Plaintiff,   )         CASE NO. _____
                                       )
          vs.                          )         **PRISONER'S**
                                       )         **APPLICATION TO PROCEED**
KATHY PROSPER, Warden,                 )         **IN FORMA PAUPERIS**
                                       )
                          Defendant.   )
_____)

  I, __Michael   Braxton__, declare, under penalty of perjury that I am the plaintiff in

the above entitled case and that the information I offer throughout this application is true and correct.

I offer this application in support of my request to proceed without being required to prepay the full

amount of fees, costs or give security. I state that because of my poverty I am unable to pay the

costs of this action or give security, and that I believe that I am entitled to relief.

  In support of this application, I provide the following information:

1.  Are you presently employed?   Yes ___ No _XX_

If your answer is "yes," state both your gross and net salary or wages per month, and give the name

and address of your employer:

Gross: ___0___       Net: ___0___

Employer: _None   as of current_

_____

If the answer is "no," state the date of last employment and the amount of the gross and net salary

1    and wages per month which you received. (If you are imprisoned, specify the last place of

2    employment prior to imprisonment.)

3    Not employed prior to incarceration

4

5

6    2.      Have you received, within the past twelve (12) months, any money from any of the following

7    sources:

8        a.      Business, Profession or             Yes ____ No XX

9            self employment

10       b.      Income from stocks, bonds,         Yes ____ No XX

11            or royalties?

12       c.      Rent payments?                  Yes ____ No XX

13       d.      Pensions, annuities, or            Yes ____ No XX

14            life insurance payments?

15       e.      Federal or State welfare payments,    Yes ____ No XX

16            Social Security or other govern-

17            ment source?

18    If the answer is "yes" to any of the above, describe each source of money and state the amount

19    received from each.

20    N/A

21

22    3.     Are you married?                      Yes ____ No XX

23    Spouse's Full Name: __ N/A

24    Spouse's Place of Employment: ___ N/A

25    Spouse's Monthly Salary, Wages or Income:

26    Gross $___ 0 _____ Net $___ 0

27    4.    a.      List amount you contribute to your spouse's support : $ N/A

28        b.      List the persons other than your spouse who are dependent upon you for support

PRIS. APPLIC. TO PROC. IN FORMA

PAUPERIS, Case No.____ _____         - 2 -

1         and indicate how much you contribute toward their support. (NOTE: For minor

2         children, list only their initials and ages. DO NOT INCLUDE THEIR NAMES.).

3   No Children

4

5   5.     Do you own or are you buying a home?         Yes ____ No __XX__

6   Estimated Market Value: $ ____0____ Amount of Mortgage: $ ____0____

7   6.   Do you own an automobile?         Yes ____ No XX

8   Make ____N/A____ Year __N/A__ Model __N/A__

9   Is it financed? Yes _____ No __XX__ If so, Total due: $ __0__

10   Monthly Payment: $ __0__

11   7.     Do you have a bank account? Yes ____ No XX (Do not include account numbers.)

12   Name(s) and address(es) of bank: __N/A__

13

14   Present balance(s): $ ____

15   Do you own any cash? Yes ____ No XX Amount: $ ____0____

16   Do you have any other assets? (If "yes," provide a description of each asset and its estimated

17   market value.) Yes ____ No XX

18   None

19   8.     What are your monthly expenses?

20   Rent: $ __0__         Utilities: __0__

21   Food: $ __0__         Clothing: __0__

22   Charge Accounts:

23

| Name of Account | Monthly Payment | Total Owed on This Acct. |
|---|---|---|
| No Accounts | $ | $ |
|  | $ | $ |
|  | $ | $ |

27   9.     Do you have any other debts? (List current obligations, indicating amounts and to whom

28   they are payable. Do not include account numbers.)

PRIS. APPLIC. TO PROC. IN FORMA

PAUPERIS, Case No. _____     - 3 -

1    No other obligations

2    _____

3    10.    Does the complaint which you are seeking to file raise claims that have been presented in

4    other lawsuits?                                    Yes ____ No XX

5    Please list the case name(s) and number(s) of the prior lawsuit(s), and the name of the court in which

6    they were filed.

7    N/A

8    _____

9        I consent to prison officials withdrawing from my trust account and paying to the court the

10   initial partial filing fee and all installment payments required by the court.

11       I declare under the penalty of perjury that the foregoing is true and correct and understand

12   that a false statement herein may result in the dismissal of my claims.

13

14   3-22-08                              Michael Glenn Braxton

15      DATE                          SIGNATURE OF APPLICANT

16

17

18

19

20

21

22

23

24

25

26

27

28
     PRIS. APPLIC. TO PROC. IN FORMA

     PAUPERIS, Case No._____          - 4 -

1

2                                                          Case Number: _____

3

4

5

6

7

8

9                              **CERTIFICATE OF FUNDS**

10                                          **IN**

11                              **PRISONER'S ACCOUNT**

12

13          I certify that attached hereto is a true and correct copy of the prisoner's trust account

14    statement showing transactions of _____ for the last six months at

15                                          [prisoner name]

16    _____ where (s)he is confined.

17                  [name of institution]

18          I further certify that the average deposits each month to this prisoner's account for the most

19    recent 6-month period were $ _____ and the average balance in the prisoner's account

20    each month for the most recent 6-month period was $_____.

21

22    Dated:_____              _____

23                                          [Authorized officer of the institution]

24

25

26

27

28

                                          - 5 -

## PROOF OF SERVICE BY MAIL BY PRISONER "IN PRO PER"

I hereby certify that I am over 18 years of age, that I am representing myself, and that I am a prison inmate.

My prison address is:

CALiFORNiA CORRECTioNal CENTER. P.O Box 2210
SuSANViLLE Ca 96127

On the "date" specified below, I served the indicated document on opposing counsel in this action at their business address by (check one):

[X] Giving the document to a correctional officer with directions to file the document with the court ("prison mailbox rule")

[X] Placing the document in an envelope, which was then sealed and postage fully paid thereon, and thereafter I caused the document to be mailed by first-class mail, with postage affixed.

Case Name:  BRAXTON  V.  PROSPER

Date:  3-22-08

Document(s) Served (check one or both):

[X] Petition for Writ of Habeas Corpus

[ ] Others (list):

_____

_____

Service Upon (opposing counsel's name and address):

_____

_____

I declare under penalty of perjury that the foregoing is true and correct.

Executed at  SuSANViLLE  (city), California.

PRINTED NAME:  MicHAEL GlENN BRAXTON

SIGNATURE:  Michael Glenn Braxton



Michael Dixton T-26973
California Correctional Center
P.O. 2210 - L-2-102-L
Susanville, Ca 96127.

Legal Mail

Legal Mail

RECEIVED
MAR 28 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

United States District Court
for The Northern District
C/o Clerk of Court.
U.S Court House
450 Golden Gate ave.
San Francisco, 94102-3483.

CALIFORNIA

PRIORITY